IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-HC-02208-M-RJ

| | |
|---|---|
| EDWARD BAGLEY, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>WARDEN RICH, )<br>)<br>Respondent. ) | ORDER |

On November 15, 2024, Edward Bagley ("petitioner"), a federal inmate at FCI Butner, filed *pro se* a petition seeking a writ of habeas corpus under 28 U.S.C. § 2241. See Pet. [D.E. 1]. Petitioner asserts that, after wrongly finding he refused the Sex Offender Management Program ("SOMP"), the Federal Bureau of Prisons ("BOP") prematurely placed him in "Adam Walsh Act" review and wrongly denied him credits under the First Step Act ("FSA") and Second Chance Act ("SCA") which, if applied, would make him eligible for release. See id.; Pet. Attach. [D.E. 1-1].

On March 14, 2025, the court allowed the action to proceed. Order [D.E. 7].

On June 4, 2025, respondent filed a motion to dismiss the action for failure to state a claim or, in the alternative, for summary judgment, Mot. [D.E. 14], a memorandum [D.E. 15], a statement of facts [D.E. 16], and an appendix [D.E. 17]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified petitioner about respondent's motion, the response deadline, and the consequences of failing to respond. [D.E. 18].

On June 27, 2025, petitioner filed a motion seeking to engage in limited discovery, Mot. [D.E. 19], and a response in opposition, Pet'r's' Resp. [D.E. 20].

The court first addresses petitioner's motion for discovery. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997) (noting, in Harris v. Nelson, 394 U.S. 286, 295 (1969), the Court held that "the 'broad discovery provisions' of the Federal Rules of Civil Procedure did not apply in habeas proceedings."). Instead, pursuant to Rule 6(a) of the Rules Governing § 2254 cases, the court may, in its discretion, authorize discovery for good cause shown. Id. "Petitioner bears the burden of showing 'good cause' and must 'present specific allegations that give the Court reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief.'" Albritton v. United States, No. 4:12-CR-00005-F-1, 2016 WL 2932165, at *4 (E.D.N.C. May 19, 2016) (citations omitted).

In support of his motion, petitioner argues, *inter alia*, that the BOP possesses relevant documents but, upon information and belief, has not presented all documents that would support his arguments, and that discovery would demonstrate issues of material fact. See Mot. [D.E. 19].

Succinctly stated, petitioner's speculative claims fail to show good cause for the requested relief, and the court DENIES this motion seeking discovery [D.E. 19].

Next, as discussed below, the court grants respondent's motion for summary judgment.

Statement of Facts:

The facts are somewhat disputed. Respondent states that: petitioner is serving a 240-month sentence for Use of an Interstate Facility to Entice a Minor into Illegal Sexual Conduct. Resp. Stmt. Mat. Facts. [D.E. 16] at ¶1. "On January 23, 2024, Petitioner met with Dr. Kevin McDermott for a Sex Offender Management Program ('SOMP') Motivational Interview, to assess Petitioner's current willingness to transfer and participate in the Sex Offender Treatment Program ('SOTP' or

2

'SOTP-R')." Id. at ¶2. "At that interview, Petitioner declined to participate in the SOTP-R, indicating he believed he was going to be released in the near future and did not have sufficient time to transfer and complete the SOTP-R." Id. at ¶3. "Dr. McDermott assured Petitioner he did have sufficient time, but Petitioner continued to express reservations about transferring and ultimately declined sex offender treatment at the January 23, 2024, meeting." Id. at ¶4. "Therefore, on January 23, 2024, Petitioner's SENTRY code was updated to reflect his decision to decline treatment." Id. at ¶5. "On April 24, 2025, Petitioner expressed interest in attending the SOTP again while housed at [FCI Butner I], at which point he was again placed on the waitlist for the program." Id. at ¶6. "Due to previously declined programming, on April 2, 2025, his FSA Time Credit Assessment showed that he could not apply his earned time credits toward his sentence." Id. at ¶7. "However, as of May 5, 2025, Petitioner accrued a total of 1685 programming days, leading to a total of 365 days of time credits toward release, and 445 days of time credits toward halfway house or home confinement." Id. at ¶8. "Petitioner is currently scheduled to release from his federal sentence on September 16, 2026, via First Step Act release." Id. at ¶9.

Petitioner, by contrast, states that: while at FCI Seagoville, his unit team advised him he would be released to a halfway house in June 2024 and was required to undergo Adam Walsh Act review at FCI Butner; he did not anticipate civil commitment under the Adam Walsh Act; contra respondent's statement, he did not tell Dr. McDermott that he "refused" to participate in the SOTP, but told him the BOP was transferring him for Adam Walsh Act review; petitioner was never asked about his desire to participate in the SOTP, and the BOP previously had not allowed him to participate in this program despite his requests over years; in July 2024, he sought administrative relief; the SOTP takes between one and two years to complete, so it did not make sense to start

3

this program shortly before his scheduled release; once at FCI Butner, psychologist Dr. Ross declined to recommend petitioner for civil commitment or further Adam Walsh Act review; after the government's response deadline for this petition, a "Certification of Sexually Dangerous Person and Petition" was filed against him in United States v. Bagley, No. 5:25-HC-02073-D (E.D.N.C.); this civil commitment proceeding was "retribution for" his instant habeas petition; Dr. Plaud, a court-appointed expert, stated he had never seen a case where the BOP sought civil commitment after an Adam Walsh Act review where civil commitment was not recommended by the psychologist reviewer; and his case is an example of how inmates convicted of sexual crimes receive unequal treatment. See Pet'r's Resp. [D.E. 20] at 1–3.

## Legal Standard:

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the petition's legal and factual sufficiency. Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

In reviewing a motion under Rule 12(b)(6), the court accepts as true all factual allegations, but the court need not accept legal conclusions drawn from the facts, see Iqbal, 556 U.S. at 678–79, or "unwarranted inferences, unreasonable conclusions, or arguments," Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quotation omitted). The court liberally construes *pro se* filings, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), but the facts alleged still "must be enough to raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The court also "may properly take judicial notice of matters of public record," and "may also consider documents attached to the complaint, see Fed. R. Civ. P. 10(c) . . . as well as those

4

attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted).

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

## Discussion:

Section 2241 empowers the court to grant habeas relief to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c); see Maleng v. Cook, 490 U.S. 488, 490 (1989); In re Vial, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997).

Respondent argues, *inter alia*, that: the petition is moot because, after petitioner joined the waitlist for the SOTP program on April 24, 2025, he is now deemed "successfully participating" in evidence-based recidivism reduction ("EBRR") programming, his FSA credits have been

5

reinstated, and he benefits from the maximum amount of FSA earned time credits toward early release or placement in community custody; petitioner's FSA time credits cannot be applied until his civil commitment proceedings under 18 U.S.C. § 4248 are resolved; and the court lacks jurisdiction to order petitioner's transfer to home confinement or community custody via the FSA. See Resp. Mem. [D.E. 15] at 8–14.

Petitioner argues, *inter alia*, that: this action is not moot because his original release date was June 2024; he should have been offered SOTP earlier; after review, petitioner's counselor at Butner agreed there is no record that he signed a SOTP refusal; his placement on the SOTP waiting list was a "preemptive response [sic]" attempting to moot this petition, not for his rehabilitative needs; his civil commitment under § 4248 already was resolved when Dr. Ross declined to recommend him for civil commitment in "early 2024," but the BOP reopened his civil commitment proceedings, overruling Dr. Ross' findings shortly after the court allowed this petition to proceed; it is Dr. Plaud's opinion that the civil commitment proceedings were undertaken in retaliation for the instant petition; petitioner was erroneously certified as a sexually dangerous person on March 31, 2025, as all psychology professionals declined to recommend civil commitment; his continued placement at FCI Butner "is in conflict with his earned FSA time credits and his release [sic]"; BOP actions "warrant immediate release from custody in lieu of community confinement placement"; and his continued detention as a sexually dangerous person is erroneous and is holding him past his date of release, in violation of the law. See Pet'r's Resp. [D.E. 20] at 3–8.

The record reflects that, as this action was pending, 365 days of FSA time credits were applied to petitioner's sentence. See Resp. App., McDermott Decl. [D.E. 17-1] at 1–3 (declaring, *inter alia*, that: McDermott is a SOMP psychologist at FCI Seagoville; McDermott authenticates

6

the attached records; McDermott interviewed petitioner on Jan.. 23, 2024, to assess his willingness to transfer and participate in the SOTP-R; petitioner declined, believing he would be released in the near future; McDermott assured petitioner there was sufficient time to complete treatment, but petitioner "continued to express reservations about transferring and ultimately declined sex offender treatment at this meeting"; thus, on Jan. 23, 2024, petitioner's SENTRY code was updated to reflect the decision to decline treatment; a review petitioner's Psychology Data System record reflects petitioner expressed interest in attending the SOTP while at FCI Butner and was added to the waitlist, and the SENTRY code was updated to "SEX OFF TRMT RES WAIT" to reflect him being added to the SOTP waitlist); id., [D.E. 17-2] (Jan. 23, 2024, SOMP Motivational Interview with McDermott noting petitioner's decision to decline SOTP-R); id., [D.E. 17-3] (Apr. 23, 2024, inmate profile reflecting, *inter alia*, that petitioner had declined sex offender treatment on Jan. 23, 2024); id., [D.E. 17-4] at 1 (Apr. 24, 2024, SOMP Admin. Note by K. O'Neal, PsyD, that petitioner had agreed to participate in SOTP, and his SENTRY would be updated to reflect "SOM RES W"); id. at 2 (Apr. 24, 2024, agreement to participate in SOTP, signed by petitioner and Dr. O'Neal); id., [D.E. 17-5] (Apr. 24, 2024, inmate profile reflecting, *inter alia*, that petitioner was placed on "SEX OFF TRMT RES WAIT" on Apr. 24, 2024, and removal from the record of the Jan. 23, 2024, declination); id., Orr Decl. [D.E. 17-6] at 1–3 (declaring, *inter alia*, that: Orr is a BOP paralegal specialist and has reviewed petitioner's attached files which Orr authenticates; as of Apr. 2, 2025, petitioner could not apply his accrued FSA time credits toward his sentence due to refusal of EBRR; as of May 5, 2025, petitioner's accrued FSA time credits now are applied to his sentence); id., [D.E. 17-7] (June 2, 2025, sentence data showing petitioner's projected good conduct release date as Sept. 16, 2027, with an FSA credits release date of Sept. 16, 2026); id.,

7

[D.E. 17-8] (Apr. 2, 2025, assessment showing petitioner was not then eligible for application of earned FSA credits because he declined an EBRR program, with a release date of Sept. 16, 2027).

Succinctly stated, because the record reflects that petitioner now is credited with the maximum 365 days of FSA time credits, this aspect of the instant petition is moot. See Adams v. Brown, No. 5:24-CV-51, 2024 WL 4169175, at *4 (N.D.W. Va. July 19, 2024), report and recommendation adopted, No. 5:24-CV-51, 2024 WL 3799421 (N.D.W. Va. Aug. 13, 2024) (dismissing as moot a petitioner's request for additional FSA credits towards release to supervised release because the petitioner had already received the maximum possible credit of 365 days).

Next, although petitioner also seeks release from BOP confinement under the SCA:

> The Second Chance Act does not empower the court to reduce sentences or change the location of where a sentence is to be served. That authority remains vested in the Bureau of Prisons. The Second Chance Act expands the authority of the Bureau of Prisons to allow a prisoner serving a sentence of incarceration to spend up to twelve months in a half-way house so as to ease the transition from prison to freedom. Thus, the Second Chance Act grants expanded authority to the Bureau of Prisons regarding half-way house service, but does not vest the authority in this court.

United States v. Squire, No. CR 3:09-502-JFA, 2012 WL 3848364, at *1 (D.S.C. Sept. 5, 2012).

Succinctly stated, the court lacks authority under the SCA to require the BOP to allow petitioner to complete his sentence in a residential reentry center ("RRC") or in home confinement. See United States v. Caudle, 740 F. App'x 364, 365 (4th Cir. 2018) (per curiam) (unpublished) (affirming the district court's finding that it lacked authority to order the BOP to place petitioner in an RRC, and further noting that petitioner's post-sentencing judicial recommendations for placement under the SCA had already been addressed in the separate sentencing court); see also United States v. Shroyer, No. 2:17CR00003, 2017 WL 4684192, at *1 (W.D. Va. Oct. 18, 2017).

8

As to petitioner's assertion that he should be released from custody because his intervening civil commitment proceedings are punitive or unfair, his Commitment Action is the proper venue for consideration of such claims. See Timms v. Johns, 627 F.3d 525, 531–33 (4th Cir. 2010) (noting, because civil commitment statutes provided a procedure for the remedy sought, a detainee should first exhaust his relief in the Commitment Action before seeking § 2241 habeas relief).

Finally, because reasonable jurists would not find the court's treatment of any of these claims debatable or wrong, and because none of the issues are adequate to deserve encouragement to proceed further, the court denies a Certificate of Appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

### Conclusion:

For the reasons discussed above, the court: GRANTS respondent's motion to dismiss or, in the alternative, for summary judgment [D.E. 14]; DENIES petitioner's motion seeking to engage in discovery [D.E. 19]; and DENIES a Certificate of Appealability. The clerk shall close the case.

SO ORDERED this 6th day of November, 2025.

Richard E Myers II
RICHARD E. MYERS II
Chief United States District Judge